UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MARC B. PRICE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:05CV01147 ERW |
| | ) |
| GKN AEROSPACE NORTH AMERICA, INC., | ) |
| JOHN MINK, and MIKE BISHOP | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court upon Defendants GKN Aerospace North America, Inc., John Mink and Mike Bishop's Motion for Summary Judgment [doc. #19].

**I. BACKGROUND FACTS**

Plaintiff Marc B. Price ("Plaintiff") commenced employment with Defendant GKN Aerospace North America, Inc. ("Defendant GKN"), as a Journeyman Machinist, in January, 2000. Plaintiff was terminated on July 25, 2002.[1]

Defendant GKN's employees are represented by a union. GKN has a collective bargaining agreement with the union, which governs the employees' rights and responsibilities. The collective bargaining agreement ("CBA") provides that an employee's leave of absence "will be granted in accordance with the Family and Medical Leave Act." Def.'s Statement of Uncontroverted Material Facts ¶ 5. Defendant GKN claims that employees are entitled to 480 hours of FMLA, which vests on the first of January each year. In the event of an absence, GKN employees are instructed to "contact GKN Human Resources at [telephone number] no later than

---

[1]Plaintiff took FMLA intermittent leave from May 24, 2001 to May 23, 2002.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

48 hours after the leave time to report the date and amount of time used. [The employee] must also notify [his] supervisor." *Id*. at 26. GKN also has a written attendance policy for its bargaining unit employees, denominated "Attendance Policy and Guidelines for Collective Bargaining Unit Employees" ("Attendance Policy").[2] The Attendance Policy provides that if an employee accrues nine days of "no fault" absences, then he will be terminated from employment.[3]

Defendant GKN contends that during the first 200 calender days of 2002, Plaintiff missed 530.9 hours of work. On July 24, 2002, the Senior Human Resources Generalist, Defendant Mike Bishop ("Mr. Bishop"), was apprised of discrepancies between the number of Plaintiff's absences documented by Plaintiff's direct supervisor, Bill Davis ("Mr. Davis") and the number of absences Plaintiff reported to the Company Leave Administrator, Mike Runge ("Mr. Runge").[4] Mr. Bishop conducted an investigation and concluded that Plaintiff failed to report 101.8 of the 530.9 hours to Mr. Runge and, thus, the hours were never deducted from Plaintiff's FMLA leave balance. Mr. Bishop further concluded that Plaintiff reported to Mr. Davis that his absences qualified for and were deducted from his FMLA leave allotment. Mr. Bishop also determined that as of the end of June 2002, Plaintiff had exhausted all leave available to him and should have been

---

[2]Defendant GKN states that the Attendance Policy has been used to determine attendance violations since the company's inception.

[3]Under the Attendance Policy, employees are subject to disciplinary action regardless of the "excuse" or "fault," unless the absence is otherwise excluded by the CBA or state or federal law. Def.'s Statement of Uncontroverted Material Facts ¶ 10. Approved Family and Medical Leaves of Absence are included in the list of exclusions to the "no fault" absences. *Id*. at ¶ 12. Defendant GKN claims that from 2001 to 2005, nine employees, other than Plaintiff, were terminated in accordance with the "no fault" Attendance Policy. *Id*. at ¶ 15.

[4]Defendant GKN states that, during this time period, Plaintiff properly reported some of his absences from work to Mr. Runge. These absences were approved as FMLA-qualifying.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

terminated for his subsequent unexcused absences.[5] Mr. Bishop recommended to the director of Plaintiff's department, Defendant John Mink ("Mr. Mink"), that he terminate Plaintiff for violating company policy and for falsely reporting FMLA leave time to his supervisors and to the GKN Leave Administrator. Plaintiff was terminated the next day, on July 25, 2002.

In response, Plaintiff disputes Defendant GKN's alleged reason for terminating him. He claims that he was unlawfully terminated for failure to adhere to Defendant GKN's requirement that employees report their FMLA leave of absence to both an immediate supervisor and to the Leave Administrator, not for reporting his absences dishonestly. Plaintiff argues that he was not required to report his absences to the Leave Administrator because informing his immediate supervisor of his absences was sufficient to impute notice to GKN, for FMLA purposes. In addition, Plaintiff claims that when he reported his absences, he stated that they were for personal leave and Mr. Davis incorrectly documented his absences as FMLA leave. Finally, Plaintiff claims that he was re-approved for FMLA leave on May 24, 2001 and May 23, 2002. Plaintiff states that, on these dates, he was entitled to twelve more weeks of leave and denies that he exhausted his leave entitlement by June 2002. At a grievance hearing on the matter, it was determined that Plaintiff was terminated for just cause.

On July 25, 2005, three years after his termination, Plaintiff filed suit against Defendants, alleging that he was terminated for taking FMLA leave, in violation of the job protection guarantees of the Family and Medical Leave Act (FMLA), 29 U.S.C.S. § 2601 et seq. In

---

[5] According to Defendant GKN, Plaintiff's vacation and sick leave vested, for the 2001-2002 year, on September 10 and September 27, 2001, respectively. Defendant GKN states that, by December 13, 2001, Plaintiff exhausted all of the vacation and sick leave he was entitled to for that year.

3

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

addition, Plaintiff asserts a retaliation claim under the FMLA.

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The United States Supreme Court has noted that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (quoting Fed. R. Civ. P. 1). "By its terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one such that "a reasonable jury could return a verdict for the nonmoving party." *Id*.

If the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23. "Thus, where the moving party can point to the absence of any evidence satisfying a necessary element of a claim, such as damages, and the non-moving party fails to produce any such evidence, summary judgment is properly entered." *Meterlogic, Inc. v. KLT, Inc.*, 368 F.3d 1017, 1018 (8th Cir.

4

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

2004).

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 249. When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 324. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

## III. DISCUSSION

The FMLA entitles qualifying employees[6] to twelve weeks of unpaid leave, during a 12-month period, if among other things an employee has "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C.S. § 2612 (a)(1)(D). The FMLA prohibits employers from interfering with, restraining, or denying the exercise of these rights. 29 U.S.C.S. § 2615 (a)(1). An employer who interferes with an eligible employee's rights under the FMLA, is liable for damages and "such equitable relief as may be appropriate." 29 U.S.C.S. § 2617(a)(1).

A.    Statute of Limitations for FMLA Claims

Under 29 U.S.C.S. § 2617, Congress implemented a two-tiered statute of limitations for FMLA claims. Generally, an individual asserting a violation must bring his claim within two years of the last event constituting the alleged violation." § 2617(c)(1) However, the statute of limitations is increased from two years to three years in cases that involve an employer's "willful" violation of the FMLA. 29 U.S.C. § 2617(c)(2); *Samuels v. Kansas City Missouri School District*, 437 F.3d 797 (8th Cir. 2006). To establish a "willful" violation of the FMLA, the 8th Circuit has instructed that a plaintiff must show that the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute. *Hanger v. Lake County*, 390 F.3d 579, 583 (8th Cir. 2004). The court in *Hanger* found that the Supreme Court's definition of willful under the Fair Labor Standards Act (FLSA) in *McLaughlin v. Richland Shoe*

---

[6] An eligible employee is defined as an employee "who has been employed (i) for at least 12 months by the employer with respect to whom leave is requested under section 2612 of this title; and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A). There is no dispute that Plaintiff is an "eligible employee."

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

*Co.*, 486 U.S. 128, 133 (1998), also applies to the FMLA. In *McLaughlin*, the Court explained that "if an employer acts reasonably in determining its legal obligation, its action cannot be deemed willful .... If an employer acts unreasonably, but not recklessly, in determining its legal obligation, then ... it should not be ... considered [willful]. *Id.* at 135 n.13 Further, an employer's general knowledge about the statute's potential applicability, by itself, fails to demonstrate willfulness. *Hanger*, 390 F.3d at 584.

Plaintiff's FMLA claim accrued on July 25, 2002, the day he was terminated.[7] Plaintiff filed his FMLA complaint on July 25, 2005.[8] There is no dispute that Plaintiff brought his claim more than two years after the last alleged wrongful act. The question for the Court, then, is whether the three-year statute of limitations applies. Plaintiff contends that his FMLA claim is subject to the three year statute of limitations because Defendant GKN willfully violated his rights by terminating him for absences they knew were excused under the FMLA.

The Court concludes that Plaintiff has failed to demonstrate that Defendant GKN knew or acted with reckless disregard as to whether its actions in terminating Plaintiff violated the FMLA. Defendant GKN has provided sufficient evidence to establish that it made a reasonably informed decision to terminate Plaintiff. Mr. Bishop and Mr. Mink recommended Plaintiff's termination after they conducted an investigation and concluded that he falsely reported, to his immediate

---

[7] The Court declines to adopt Plaintiff's contention that the Statute of Limitations began on the date of the Grievance hearing decision, August 9, 2002. The Eight Circuit has made clear that subsequent events that may change the outcome of the employer's original adverse decision does not constitute a new violation of the FMLA. *See* Hanger, 390 F.3d at 583 (The Board of Commissioner did not commit an additional violation of the FMLA on the date it accepted Plaintiff's former resignation).

[8] An action is commenced on the date the complaint is filed. *See* 29 U.S.C. § 2617(c)(3).

7

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

supervisor, that his absences were approved for FMLA leave.[9] The supervisors also determined that there were inconsistencies between the number of absences Plaintiff reported to his immediate supervisor and the number of absences he reported to the FMLA leave administrator.[10] Finally, Defendant GKN's supervisors determined that, by June 2002, Plaintiff exceeded the number of absences permitted under the FMLA and under GKN's no-fault Attendance Policy.[11] Therefore, irrespective of Plaintiff's alleged fraudulent acts, Plaintiff should have been terminated for his unexcused absences. Thus, Plaintiff cannot establish that Defendant GKN willfully violated the FMLA.

---

[9] Plaintiff admits that he stopped reporting his absences to the individual appointed by GKN to approve employees' FMLA leave.

[10] In support of their allegation, Defendant GKN provided the Court with a summary of the dates where it claims Plaintiff reported to his immediate supervisor that his absences qualified for FMLA leave but either failed to notify GKN's FMLA Leave administrator of his absences or reported less time than he actually took. Plaintiff has not challenged the accuracy of the dates nor the absences.

[11] The Court disagrees with Plaintiff's contention that he was entitled to twelve more weeks of FMLA leave on May 24, 2001 and May 23, 2002. The evidence in the record indicates that, on those dates, Defendant GKN granted Plaintiff intermittent leave at the recommendation of his physician. Intermittent leave is defined as "FMLA leave taken in separate blocks of time due to a single qualifying reason." 29 C.F.R. § 825. 203 (1993). Intermittent leave does not entitle an employee to additional FMLA leave time. Instead, if an employee takes leave on an intermittent or reduced leave schedule, the amount of leave actually taken is counted toward the 12 weeks of leave to which the employee is entitled. *Id*. § 825.205(a); *see also Id*. § 825.200 (a)(1) (an eligible employee's FMLA leave entitlement "is limited to a total of 12 workweeks of leave during any 12-month period.").
    Defendant GKN has provided the Court with sufficient evidence to establish that it measures FMLA leave eligibility on a calender year basis. On the first day of January each year, employees are credited with 12 weeks of FMLA leave. *See* Bishop Decl. ¶ 13. In addition, there is sufficient evidence in the record to indicate that Plaintiff exceeded his twelve month leave entitlement for 2002, by the end of June 2002. *See* Def.'s Statement of Uncontroverted Material Facts ¶ 45.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Furthermore, the Federal Appellate courts have held that an employer is not in violation of the FMLA if it discharges an employee because it honestly believed that the employee committed fraud in making a claim, even if its conclusion is mistaken. *See Medley v. Polk Co.*, 260 F.3d 1202, 1207-1208 (10th Cir. 2001) (finding that an employer who discharged employee honestly believing that employee was not using leave under the FMLA is shielded from liability even if its conclusion was mistaken); *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 680 (7th Cir. 1997) ("Discrimination statutes allow employers to discharge employees for almost any reason whatsoever as long as the reason is not illegal discrimination. Thus when an employee is discharged because of an employer's honest mistake, federal anti-discrimination laws offer no protection."). The Court finds that Defendant GKN has demonstrated that it terminated Plaintiff because it honestly believed that Plaintiff was attempting to obtain additional leave fraudulently and determined that Plaintiff had exceeded the number of permitted unexcused absences under Defendant GKN's Attendance Policy.

Accordingly, the Court's review of the record reveals no evidence or reasonable inference that Defendant GKN knew its decision to terminate Plaintiff constituted a willful violation of the statute and, thus, no genuine question of material fact exists on the issue. Therefore, the Court finds that the two year statute of limitations applies and Plaintiff's claim is time barred. The Court is not required to determine whether Plaintiff's allegations survive summary judgment on the merits.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Accordingly,

**IT IS HEREBY ORDERED** that Defendants GKN Aerospace North America, Inc., John Mink and Mike Bishop's Motion for Summary Judgment [doc. #19] is **GRANTED.**

Dated this 20th day of October, 2006.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE

PDF created with FinePrint pdfFactory trial version www.pdffactory.com